# UNITED STATES DISTRICT COURT
### *for the*
## SOUTHERN DISTRICT OF NEW YORK

WILLIAM HENNEBERRY,

Case No.:  04 Civ. 2128 (PKL)

Plaintiffs,

-against -

SUMITOMO CORPORATION OF AMERICA;
ROBERT GRAUSTEIN; SUMITOMO CORPORATION;
And, John Does 1-50 (fictitiously named individuals),

Defendants.

## Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint

**MENDES & MOUNT, LLP**
**One Newark Center, 19th Floor**
**Newark, New Jersey 07102**
**(973) 639-7300**
*Attorneys for Plaintiff*

*Dated: June 8, 2004*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT OF FACTS ................................................................................................. 1

PRELIMINARY STATEMENT .......................................................................................... 1

LEGAL ARGUMENT

POINT I

    DEFENDANTS' MOTION MUST BE DENIED UNLESS IT
    IS BEYOND DOUBT THAT PLAINTIFF COULD NOT
    ESTABLISH ANY SET OF FACTS WARRANTING
    RELIEF ...................................................................................................................... 2

POINT II

    PLAINTIFF'S FIRST COUNT SETS FORTH A VIABLE
    CAUSE OF ACTION FOR PROMISSORY ESTOPPEL &
    NEGLIGENT MISREPRESENTATION ................................................................. 3

    A.    Promissory Estoppel ...................................................................................... 3

    B.    Negligent Misrepresentation ......................................................................... 5

POINT III

    PLAINTIFF'S SECOND COUNT SETS FORTH A VIABLE
    CAUSE OF ACTION FOR DEFAMATION ......................................................... 7

    A.    Because defendants' statements were slanderous *per se,*
        there is no need to plead special damages ...................................................... 8

    B.    Defendants' actions are not entitled to the qualified
        "common interest" privilege .......................................................................... 9

    C.    Plaintiff's allegations of scienter and improper purpose
        serve to avoid claims of qualified privilege at the pleading
        stage . ........................................................................................................... 10

**POINT IV**

    **PLAINTIFF'S THIRD COUNT SETS FORTH A VIABLE
CAUSE OF ACTION FOR INJURIOUS FALSEHOOD**......................................12

**POINT V**

    **PLAINTIFF'S FOURTH COUNT SETS FORTH A VIABLE
CAUSE OF ACTION FOR TORTIOUS INTERFERENCE
WITH PROSPECTIVE ADVANTAGE**...................................................................13

**POINT VI**

    **PLAINTIFF'S FIFTH COUNT SETS FORTH A VIABLE
CAUSE OF ACTION FOR BREACH OF CONTRACT**.......................................14

**POINT VII**

    **PLAINTIFF'S SIXTH COUNT SETS FORTH A VIABLE
CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**.........................16

**POINT VIII**

    **PLAINTIFF HAS APPROPRIATELY PLED SPECIAL
DAMAGES AND IS ENTITLED TO RECOVER THE
VALUE OF HIS DIMINISHED SMARTIX STOCK**...........................................18

    A.    Plaintiff has pled special damages with the requisite
particularity.............................................................................................18

    B.    Claims of Injurious Falsehood are not limited to cases of
"trade libel" and damages are not limited to claims of
property damage......................................................................................18

    C.    Mr. Henneberry's claims of diminished stock value are
personal and are the result of defendants' tortious actions
against him...............................................................................................21

    D.    Any questions concerning proximate cause are properly left
for the Jury and are not amenable to disposition on a
motion to dismiss....................................................................................23

POINT IX

PLAINTIFF IS ENTITLED TO AMEND THE COMPLAINT
AS OF RIGHT..............................................................................................................24


CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Abrams v. Donati,*
66 N.Y.2d 951 (1985) ..........................................................................................22

*Aikens v. State of Wisconsin,*
195 U.S. 194, 204, 25 S.Ct. 3, 49 L.Ed. 154 (1904).........................................12

*Annis v. County of Westchester, N.Y.,*
36 F.3d 251 (2d. Cir.1994) .....................................................................................2

*Barbour v. Knecht,*
296 A.D.2d 218, 743 N.Y.S.2d 483 (2002) ........................................................17

*Barnum v. Millbrook Care Ltd. Partnership,*
850 F.Supp. 1227 (S.D.N.Y. 1994).....................................................................15

*Bohm v. Holzberg,*
47 A.D.2d 764, 365 N.Y.S.2d 262 (2d. Dept. 1975) ....................................19, 20

*Bordereaux v. Salomon Smith Barney Holdings, Inc.,*
269 A.D.2d 217 (App. Div. 1997) .......................................................................22

*Boyd v. Nationwide Mutual Insurance Company,*
208 F.3d 406 (2d. Cir.2000).................................................................................10

*Carruthers v. Waite Min. Co.,*
306 N.Y. 136 (1953) ............................................................................................21

*Chapman v. Fargo,*
223 N.Y. 32, 119 N.E. 76 (1918)..........................................................................16

*Chemical Bank v. City of Jamestown,*
122 A.D.2d 530 (4th Dept. 1986) ........................................................................5

*Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch Constr. Auth.,*
23 F.3d 636 (2d. Cir.1994).....................................................................................2

*Clarke v. Greenberg,*
296 N.Y. 146 (1947) ............................................................................................21

*Conley v. Gibson,*
355 U.S. 41, 78 S.Ct. 99 (1957)......................................................................2, 24

*Cromarty v. Prentice-Hall, Inc.,*
72 A.D.2d 782 (2d. Dept. 1979) .................................................................................19

*Davis v. Magavern,*
237 A.D.2d 902 (App. Div. 1997) ...............................................................................22

*Davis v. Ross,*
754 F.2d 80 (2d. Cir.1985)............................................................................................8

*Derdiarian v. Felix Contr. Corp.,*
51 N.Y.2d 308, 434 N.Y.S.2d 166 (1980) ..................................................................23

*Diehl & Sons, Inc. v. International Harvestor*
445 F.Supp. 282 (E.D.N.Y. 1978) ...............................................................................20

*EBC I, Inc. v. Goldman Sachs & Co.,*
2004 WL 1118313 (1st Dept. 2004) .......................................................................6, 17

*Ellis v. Chao,*
336 F.3d 114 (2d. Cir.2003).........................................................................................24

*Felsen v. Sol Café Mfg. Corp.,*
24 N.Y.2d 682 (1969) ..................................................................................................14

*Flickinger v. Harold C. Brown & Co.,*
947 F.2d 595 (2d. Cir.1991).........................................................................................15

*Geisler v. Petrocelli,*
616 F.2d 636 (2d. Cir.1980)...........................................................................................2

*Geltman v. Levy,*
11 A.D.2d 411 (1960) ..................................................................................................21

*Glenn v. Hoteltron Systems, Inc.,*
74 N.Y.2d 386 (1989) ..................................................................................................21

*Golden v. Garafalo,*
678 F.2d 1139 (2d. Cir.1982).......................................................................................17

*Goldman v. Belden,*
754 F.2d 1059 (2d. Cir.1985).........................................................................................2

*Gould v. Ruefenacht,*
471 U.S. 701, 105 S.Ct. 2308 (1985)...........................................................................17

*Groat v. Town Board of the Town of Glenville,*
100 Misc.2d 326, 418 N.Y.S.2d 842 (Sup.Ct.1979) ........................................................20

*Guard-Life Corporation v. S.Parker Hardware Mfg. Corp.,*
50 N.Y.2d 183 (1980) ........................................................................................................13

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229, 109 S.Ct. 2893 (1989) ................................................................................2

*Harte-Hanks Communications, Inc. v. Connaughton,*
491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ..................................................11

*Hishon v. King & Spalding,*
467 U.S. 69, 104 S.Ct. 2229 (1984) ..................................................................................2

*Howard v. Alford,*
645 N.Y.S.2d, 208 (4th Dept. 1996) ................................................................................9

*Hydro Investors, Inc. v. Trafalgar Power, Inc.,*
227 F.3d 8 (2d. Cir.2000) .................................................................................................6

*In re Chateaugay Corp.,*
139 B.R. 598 (Bankr., S.D.N.Y. 1992) .............................................................................4

*Kelly v. Schmidberger,*
806 F.2d 44 (2d. Cir.1986) ................................................................................................7

*Kenford v. County of Erie,*
73 N.Y.2d 312, 540 N.Y.S.2d 312 (1989) .........................................................................16

*Kimmell v. Schaefer,*
89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996) .....................................................................6, 17

*King v. Crossland Savs. Bank,*
111 F.3d 251 (2d. Cir.1997) ..............................................................................................6

*Knapp Engraving Co. v. Keystone Photo Engraving Corp.,*
1 A.D.2d 170, 148 N.Y.S.2d 635 (1956) ..........................................................................12

*Korry v. ITT,*
444 F.Supp. at 193 (S.D.N.Y. 1978) .............................................................................19, 20

*Liberman v. Gelstein,*
80 N.Y.2d 429, 590 N.Y.S.2d 857,605 N.E.2d 344 (1992) ................................................7

iii

*Marine Transport Lines, Inc. v. IOMMP,*
636 F. Supp. 384 (S.D.N.Y. 1986)................................................................................5

*McCullough v. Certain Tweed Products Corp.,*
70 A.D.2d 771, 417 N.Y.S.2d 353 (4th Dept. 1979) ......................................................19, 20

*MK West St. Co. v. Meridien Hotels, Inc.,*
184 A.D.2d 312, 584 N.Y.S.2d 310, (1st Dept. 1992)....................................................15

*NBT BankCorp. V. Fleet/Norstar Fin. Group,*
87 N.Y.2d 614 (1996) ...................................................................................................13

*New Castle Siding Company v. Wolfson,*
97 A.D.2d 501 (1983) ...................................................................................................22

*Norte & Co. v. Huffines,*
416 F.2d 1189 (1969).....................................................................................................21

*Nowlin v. City of New York,*
81 N.Y.2d 81, 595 N.Y.S.2d 927 (1993) .......................................................................23

*Olivieri v. McDonald's Corp.,*
678 F.Supp. 996 (E.D.N.Y. 1988). ...............................................................................10

*Oneida Indian Nation of New York v. City of Sherrill, New York,*
337 F3d 139 (2d. Cir.2003)...........................................................................................24

*Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co.,*
7 A.D.2d 441, 184 N.Y.S.2d 58, modified on other grounds,
8 A.D.2d 808, 187 N.Y.S.2d 476 (1st Dept. 1959)........................................................12, 19

*Perlman v. Feldmann,*
219 F.2d 173 (1955)......................................................................................................21

*R.G. Group v. Horn & Hardart Co.,*
751 F2d 69 (2d. Cir.1984).............................................................................................3

*Rager v. McCloskey,*
305 N.Y. 75, 111 N.E.2d 214 (1953)............................................................................12

*Ricciuti v. New York City Transit Auth.,*
941 F.2d 119 (2d. Cir.1991)..........................................................................................3

*Robinson v. Town of Colonie,*
878 F.Supp. 387 (N.D.N.Y.1995)..................................................................................7

*Ruza v. Ruza,*
286 App.Div. 767, 146 N.Y.S.2d 808 (1955)......................................................................12

*Sabbeth Industries Limited v. Pennsylvania Lumbermans Ins. Co.,*
656 N.Y.S.2d 475 (3d. Dept. 1997) ....................................................................................16

*Sadowy v. Sony Corporation of America,*
496 F.Supp. 1071 (S.D.N.Y. 1980)..........................................................................18, 19, 21

*Sautter v. Fulmer,*
258 N.Y. 107 (1932) ...........................................................................................................21

*Schaeffer v. Lipton,*
243 A.D.2d 969 (4th Dept. 1997) .......................................................................................22

*Scheuer v. Rhodes,*
416 U.S. 232, 94 S.Ct. 1683 (1974), *overruled on other grounds,*
468 U.S. 183, 104 S.Ct. 3012 (1984).................................................................................2, 3

*Schur v. Salzman,*
50 A.D.2d 784 (1975) .........................................................................................................21

*Septembertide Publishing, B.V. v. Stein & Day, Inc.,*
884 F.2d 675 (2d. Cir.1989) aff'd without opinion
43 F.3d 1458 (2d. Cir.1994)...............................................................................................15

*Shapolsky v. Shapolsky,*
53 Misc.2d 830 (Sup.Ct. 1966), *affd,* 28 A.D.2d. 513 ......................................................22

*Sprewell v. NYP Holdings, Inc.,*
772 N.Y.S.2d 188 (2003) ....................................................................................................19

*Stukuls v. New York,*
42 N.Y.2d 272, 397 N.Y.S.2d 741 (1977) ..........................................................................11

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
250 F.3d 87 (2d. Cir.2001).................................................................................................6

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,*
925 F.2d 566 (2d. Cir.1991)...............................................................................................15

*Weldy v. Piedmont Airlines, Inc.,*
985 F.2d 57 (2d. Cir.1993)....................................................................................7, 9, 10, 11
*Wolff v. Wolff,*
67 N.Y.2d 638 (1986) .........................................................................................................21

*Yusuf v. Vassar College,*
35 F.3d 709 (2d. Cir.1994) .................................................................................2

*Zeevi v. Union Bank of Switzerland,*
1993 WL 148871 (S.D.N.Y. 1993).................................................................11

<u>Rules</u>

Fed.R.Civ.P. 12(b)(6)......................................................................................12

Fed.R.Civ.P. 8(e)(1)..........................................................................................7

Fed.R.Civ.P. 9(b) ..............................................................................................7

Fed.R.Civ.P. 15(a) ..........................................................................................24

## STATEMENT OF FACTS

The Court is respectfully referred to the Complaint for the facts pertinent to this motion to dismiss.

## PRELIMINARY STATEMENT

In their argumentative statement of facts, defendants trundle out the tired "old saw" of sour grapes in attempting to turn this Court against Mr. Henneberry. To this end, defendants spend considerable time twisting the allegations of the complaint, omitting relevant portions thereof, and re-combining same to suit their purpose. Defendants make reference to such non-issues such as the "lack of an employment contract" between Mr. Henneberry and Smartix as well as Mr. Henneberry's innocent use of the words "term sheet" instead of "agreement" or "contract" in his September 19, 2003 e-mail to Mr. Frank. They do this knowing full well that, as a matter of law, there is no prerequisite for a written contract in order for an officer or employee to be entitled to salary. Further, defendants are well aware that Mr. Henneberry's September 19, 2003 e-mail was written while Mr. Henneberry was on vacation and out of the office. Indeed, it is alleged that defendants waited until Mr. Henneberry was away on this vacation to improperly contact the Red Sox and MasterCard. *See*, Comp. at para. 87.

Furthermore, for defendants to posture that they are somehow unaware of each and every writing, oral statement and allegation of pecuniary loss referenced in the Complaint, is simply disingenuous and misleading. For example, the documents surrounding the June 2002 agreement were drafted by Sumitomo Corporation of America [hereinafter SCOA] and are specifically referenced in the Complaint. *See*, Comp. at para 55, 57. As alleged, defendants were actively involved in the activities of Smartix, including the company's finances and payroll.

- 1 -

**ARGUMENT**

**POINT I.**

**DEFENDANTS' MOTION MUST BE DENIED UNLESS IT IS BEYOND DOUBT THAT PLAINTIFF COULD NOT ESTABLISH ANY SET OF FACTS WARRANTING RELIEF.**

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 109 S.Ct. 2893 (1989), quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229 (1984); *See, also, Annis v. County of Westchester, N.Y.,* 36 F.3d 251, 253 (2d Cir.1994). A motion to dismiss should not be granted "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir. 1994), *quoting, Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *H.J. Inc.* at 492 U.S. at 249, 109 S.Ct. 2893. *See also, Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994). Further, the Court's consideration is limited to the complaint, documents attached to the complaint, undisputed documents alleged or referenced in the complaint, and public records. *See,* 2 James Wm. Moore, Moore's Federal Practice, ¶ 12.34[2] at 12-66 (3d ed.1997).

The Court's duty is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S.

- 2 -

232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104

S.Ct. 3012 (1984); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991)

(plaintiff is not compelled to prove his case at the pleading stage).

## POINT II.

### PLAINTIFF'S FIRST COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR PROMISSORY ESTOPPEL & NEGLIGENT MISREPRESENTATION

**A.     Promissory Estoppel.**

Plaintiff agrees that a cause of action for promissory estoppel requires the following

elements: 1) a clear and unambiguous promise; 2) a reasonable and foreseeable reliance by the

party to whom the promise is made; and, 3) injury sustained by the party asserting the estoppel.

*R.G. Group v. Horn & Hardart Co.,* 751 F2d 69, 78 (2d Cir. 1984).

Here, SCOA engaged in a pattern of behavior which consisted of a series of affirmative

promises concerning what defendants were doing, and would do, for Smartix.  These promises

were made upon a backdrop of a close working relationship with Mr. Henneberry as Chairman of

Smartix.  In addition, these promises were made with the knowledge that Mr. Henneberry was

lending money to the company in reliance upon these representations.

As set forth in detail in the complaint, SCOA did the following: SCOA held itself out as

Smartix' "lead investor"; SCOA contracted to provide up to $5 million in investment to Smartix;

as part of this agreement, SCOA induced Smartix to change its position in several material ways

in part performance; after SCOA breached this agreement, SCOA actually did provide $1 million

in investment; SCOA regularly received financial reports from Smartix, including reports of Mr.

Henneberry's salary and loans to the company; SCOA met with Mr. Henneberry, Mr. Montuori

and Mr. Snyder in June of 2003 to discuss the company's dire financial condition; at that June

meeting SCOA stated, through Mr. Graustein, "we won't let you fail"; Mr. Graustein then

directed Mr. Henneberry to create a marketing plan involving ten professional teams and another

million dollar investment by SCOA; Mr. Henneberry advised Mr. Graustein that Smartix should consider a cessation of operations and Mr. Graustein responded in writing that such action was not within Mr. Henneberry's legal rights; and, throughout the period of July 2002 through October 2003, SCOA repeatedly communicated to Mr. Henneberry that it was actively soliciting outside investment and had investors who were willing to invest.  As a result, Mr. Henneberry was continually asked to revise and update various proposals and other documents to be presented to these "investors". *See*, Comp. at para. 26 through 118. Further, throughout this entire period of time, defendants were aware that Mr. Henneberry was relying upon their actions and statements in loaning his own money to the company pending  further investment. *See*, Comp. at para. 115.

Now, defendants come before the Court and claim that their inducements were not pled with sufficient particularity. Defendants claim that the allegations of repeated assurances and the direct quote "we won't let you fail" are not clear. It is submitted that these representations, coming from the "lead investor" for Smartix, could not be more clear. As alleged, Mr. Henneberry was reasonably left with the impression that SCOA was actively obtaining further investment, or would provide it itself.

Defendants also argue that Mr. Henneberry's actions were "unreasonable" because the promise was not made to him personally. However, there is no such requirement for a personal promise in the law. The single case cited by defendant, *In re Chateaugay Corp.*, 139 B.R. 598 (Bankr., S.D.N.Y. 1992) involved a sub-sub-contractor's attempt to invoke promissory estoppel as against a prime contractor where: there was no contract between the two entities, and the two entities had never communicated directly. *Id.* at 601, 605,606.  Here, defendants knew that Mr. Henneberry was loaning money to the company and that the company would not survive without the continuing infusions of cash provided by him.   In light of defendants' actions, it was eminently foreseeable, and reasonable, for Mr. Henneberry to continue his prior practice of

- 4 -

making loans to the company. After all, as is clear in retrospect, his lead investor was always dangling the carrot of future investment before him.

The other cases cited by defendants are also readily distinguishable either on their procedural posture or facts. In *Marine Transport Lines, Inc. v. IOMMP*, 636 F.Supp. 384 (S.D.N.Y. 1986), the action was before the court on summary judgment after a full opportunity to develop the record. The comments there: "we look forward to growing together" and "we're partners" were made during the course of labor negotiations by experienced labor negotiators. *Id.* at 391. This case is neither fully developed through discovery, nor does it involve professional labor negotiators.

Similarly, *Chemical Bank v. City of Jamestown*, 122 A.D.2d 530 (4th Dept. 1986) is also readily distinguishable on its facts. There, plaintiff attempted to convert an application by the City for a governmental grant, which was specifically conditioned upon a third-party's performance, into the City's guarantee of a third-party loan made by plaintiff. *Id.* at 531. *Chemical Bank* is too far removed to be of value here.

It is therefore respectfully submitted that Mr. Henneberry has sufficiently pled a cause of action for detrimental reliance based upon promissory estoppel. The promises were clear and the results were foreseeable.

**B.    Negligent Misrepresentation.**

Plaintiff's First Cause of Action also asserts a claim for detrimental reliance based upon defendants' negligent misrepresentations. Under New York law, the elements of a negligent misrepresentation claim are that: 1) the defendant had a duty, as a result of a special relationship, to give correct information; 2) the defendant made a false representation that he or she should have known was incorrect; 3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; 4) the plaintiff intended to rely and act upon it; and 5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Investors,*

- 5 -

*Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 20 (2d Cir.2000);  *see also, King v. Crossland Sav. Bank,* 111 F.3d 251, 257-58 (2d Cir.1997).

To determine whether a special relationship exists in a commercial context such as the one presented by this case, a court generally weighs three factors:  "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and, whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715 (1996).   If there is a special relationship between the parties, statements that go beyond "casual statements and contacts" and are "deliberate representations" will give rise to the duty to speak with care.  *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 103 (2d Cir.2001), quoting *Kimmell,* 89 N.Y.2d at 263. Investment bankers have been found to be "professionals" possessing special skill, knowledge and experience. *EBC I, Inc. v. Goldman Sachs & Co.,* 2004 WL 1118313 at *2 (1st Dept. 2004)(A copy of *EBC I* is attached to the Declaration of John M. Deitch, Esq. [hereinafter Deitch Decl.] as Exhibit "1")

The *Kimmell* elements are met here because: SCOA possessed special skill and expertise with regard to obtaining investment capital; SCOA held itself out as the "lead investor" for Smartix; SCOA made false statements in the form of its promise: "we won't let you [Smartix] fail" and its ongoing representations concerning providing investment and having various "investors" for Smartix; the information conveyed by SCOA was for a serious purpose; Mr. Henneberry intended to rely upon, and did reasonably rely upon, the information provided by SCOA to his detriment. *See,* Comp. at para. 26-118.

It is therefore respectfully submitted that Mr. Henneberry has sufficiently pled a cause of action for detrimental reliance based upon defendants' negligent misrepresentations.

- 6 -

## POINT III.

## PLAINTIFF'S SECOND COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR DEFAMATION

Under New York law, the elements of either libel or slander include (1) a false and defamatory statement of fact, (2) regarding the plaintiff, (3) the publication of the written or oral statements to a third party, and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Robinson v. Town of Colonie,* 878 F.Supp. 387, 408 (N.D.N.Y.1995). The court presumes compensable injury if the defamatory statement falls within a category of slander *per se. Weldy* at 61-62, citing, *Liberman v. Gelstein,* 80 N.Y.2d 429, 590 N.Y.S.2d 857, 860-61, 605 N.E.2d 344 (1992).

The pleading standard for an action for slander brought in federal court is governed by Fed.R.Civ.P. 8. *See, Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986). "The test of a complaint's sufficiency is whether it is detailed and informative enough to enable defendant to respond and to raise the defense of res judicata if appropriate." *Id.* at 46. The standards for sufficiency of the pleading under Rule 8 are liberal: "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). Thus, the complaint need not contain the defamatory statements *in haec verba* ("in these words"). *Kelly* at 46. Furthermore, pursuant to F.R.Civ.P. 9(b), conditions of the mind such as "malice intent, knowledge, and other condition of mind. . ." may be averred generally.

Here, plaintiff complains that defendants made their defamatory statements through their employee Robert Graustein when Mr. Graustein surreptitiously met with both Mike Dee of the Boston Red Sox and John Stuart (and others) of MasterCard in September of 2003. *See,* Comp. at paras. 87, 90, 99, 106. It is alleged that Mr. Graustein advised the Red Sox and MasterCard that "Mr. Henneberry lacked the necessary skill and ability to manage Smartix and otherwise

disparaged his business acumen. Further, Mr. Graustein placed blame for Smartix' present financial condition and inability to pay monies owed to the Red Sox, upon the purported mismanagement of Smartix by Mr. Henneberry." *See*, Comp. at para. 90, 100.

While defendants claim that these statements were mere opinion, it is respectfully submitted that any such argument is premature.  Until the offending words are placed upon the record, no determination as to their import can be made. Here, as is allowed by Rule, plaintiff has simply placed defendants upon notice of the wrong, and has not specified the exact words complained of.

It is also alleged that the statements by Mr. Graustein were false, and known to be false, at the time they were made. *See*, Comp. at para. 121. As a result of these statements, both entities were caused to form very unfavorable opinions of Mr. Henneberry whereas their opinions prior to these meetings had been excellent. This change is typified by the reaction of Mr. Dee, who, prior to defendants' actions, had written to Mr. Henneberry on July 2, 2003 and stated: "We have taken a leap of faith by aligning ourselves with Smartix, in large part due to my confidence and trust in you personally." After defendants defamed Mr. Henneberry to Mr. Dee, Defendants advised Mr. Henneberry that Mr. Dee would no longer continue in the Smartix project if Mr. Henneberry was associated with the project in any way. See, Comp. at paras. 107-110, 125 and Exhibit "C" to the Complaint.

Accordingly, it is respectfully submitted that plaintiff has averred all of the necessary operative facts to plead a cause of action for defamation as against defendants.

**A.     Because defendants' statements were slanderous per se there is no need to plead special damages.**

Statements that tend to disparage or injure plaintiff in his or her trade or profession are slanderous *per se. Davis v. Ross,* 754 F.2d 80, 82 (2d Cir.1985).   When statements are

- 8 -

defamatory *per se,* the law presumes that damages will result, and special damages need not be alleged. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993).

To establish slander *per se,* statements reasonably understood as "imput[ing] fraud, dishonesty, incompetence, incapacity, or unfitness in the performance of [plaintiff's] trade" are required. *Howard v. Alford,* 645 N.Y.S.2d at 208 (4th Dept. 1996). The complaint identifies the disparaging statements as relating to Mr. Henneberry's alleged mis-management of Smartix and his business acumen. *See,* Comp. at para. 90, 100. As such, defendants' comments fall into the category of comments which are defamatory *per se,* and there is no need to plead special damages. However, as is addressed below, Mr. Henneberry has pled special damages should the Court find such a requirement.

Here, defendants' statements were sufficiently disparaging of Mr. Henneberry's trade and profession so as to completely reverse the excellent opinions both MasterCard and the Boston Red Sox had of Mr. Henneberry's ability.

It is respectfully submitted that Mr. Henneberry is entitled to take discovery on these issues to determine exactly what was said and to determine the exact context of the comments. The liberal pleading requirements of Rule 8 should not be converted to a sword to prevent plaintiff from access to the Courts and redress for the wrongs committed by defendants.

**B.    Defendants' actions are not entitled to the qualified "common interest" privilege.**

Defendants had no shared interest with the Boston Red Sox that would entitle them to exercise a purported right to communicate with the Red Sox concerning the business of Smartix. Said differently, just because defendants had a relationship with Smartix, that relationship did not create a communal interest between defendants, the Red Sox and MasterCard. While it is anticipated that defendants will dispute this point, defendants' arguments in that regard are properly raised in their answer and are not properly heard in connection with a motion to dismiss on the pleadings.

- 9 -

This matter involves complex business relationships between a number of entities and individuals.   Many of the relationships are supported by written agreements and subject to interpretation through the portions course of dealings and communications.   No portion of the various relationships are amenable to dismissal without discovery and defendant should not be permitted to convert this motion to dismiss into a consideration of the merits of this matter.

**C.      Plaintiff's allegations of scienter and improper purpose serve to avoid claims of qualified privilege at the pleading stage.**

While plaintiff disputes defendants' assertion of the qualified "common interest" privilege as well as defendants' ability to assert the privilege by way of a motion to dismiss, even assuming, *arguendo* that the privilege is available, plaintiff has pled the requisite scienter to avoid dismissal based upon the privilege.   Alternatively, plaintiff has pled facts which warrant discovery as to the applicability of the privilege.

The qualified privilege of "common interest" is a known defense to claims of slander. *See, Weldy,* 985 F.2d at 62.   Good faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty. *Olivieri v. McDonald's Corp.,* 678 F.Supp. 996, 1001-02 (E.D.N.Y.1988). The qualified privilege creates a "rebuttable presumption of good faith that may constitute a complete defense." *Weldy,* 985 F.2d at 62.

However, the privilege is rebutted if the plaintiff alleges that the comments were either: made for purposes beyond the scope of the privilege; made with common law malice; or, made with knowledge that the statement was false or with a reckless disregard as to its truth. *Boyd v. Nationwide Mutual Insurance Company,* 208 F.3d 406, 410 (2d Cir. 2000) *citing, Weldy,* 985 F.2d at 62.

In *Boyd,* the court described the three afore-mentioned scenarios as follows:

First, acting beyond the scope of the privilege occurs where a defendant does not

- 10 -

exercise the privilege in a reasonable manner, abuses the occasion, or makes the statement "in furtherance of an improper purpose." *Weldy,* 985 F.2d at 62 (citation omitted). Second, common law malice focuses on defendant's "personal spite or ill-will." *Zeevi v. Union Bank of Switzerland,* 1993 WL 148871 at *9 (S.D.N.Y. 1993) (citation omitted). The third form of abuse, reckless disregard for truth, is also known as acting with malice in the constitutional sense. *See Zeevi,* 1993 WL 148871 at *9. Constitutional malice requires either "a high degree of awareness of [the statement's] probable falsity" or "serious doubts as to [its] truth." *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (citations omitted).

*Boyd* at 410.

Here, plaintiff alleges that: "SCOA's statements to Mr. Dee and MasterCard were false, and were known to be false at the time they were published." *See,* Comp. at para. 121. Accordingly, the statements complained of are alleged to have been made with the requisite "constitutional" malice to survive the instant motion.

In addition, plaintiff alleges that defendants' statements were made in furtherance of a wrongful, improper, "scheme" to take control of Smartix. *See,* Comp. at para. 124. As such, plaintiff has alleged that defendants abused the occasion thereby taking their statements outside the scope of the privilege.

The *Boyd* court also held that, in certain circumstances, "a plaintiff may allege facts suggestive enough to warrant discovery, even where those facts alone would not establish a cause of action for defamation." *Boyd* at 410,411 *citing Stukuls v. New York,* 42 N.Y.2d 272, 397 N.Y.S.2d 740, 746 (1977) (finding that "it cannot be said in advance of discovery that [plaintiff] will not be able to raise an issue of fact" as to qualified privilege).

Accordingly, here, where plaintiff has placed defendants upon notice of the time, place, and manner of the alleged defamatory communications and plaintiff has shown the effect of those communications upon the Red Sox and MasterCard, it is respectfully submitted that plaintiff has made a sufficient showing to avoid dismissal or, at a minimum, obtain discovery concerning the acts complained of.

- 11 -

## POINT IV.

## PLAINTIFF'S THIRD COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR INJURIOUS FALSEHOOD.

*Penn-Ohio Steel Corporation v. Allis-Chalmers Manufacturing Company*, 7 A.D.2d 441, 184 N.Y.S.2d 58 (1st Dept. 1959) is the seminal case for the tort of injurious falsehood. There, plaintiff alleged injury arising out of defendants failure to disclose information to the Internal Revenue Service. As a result, plaintiffs were indicted for tax evasion. *Id.* at 443.  Plaintiff there sought compensation for injuries based upon the actions of defendants.

In distinguishing the acts complained of there from a cause of action for prima facie tort, the Court of Appeals held as follows:

> Whether the cause of action pleaded should or should not be denominated as one for a prima facie tort is of no moment, for the plaintiffs' right to maintain it does not hinge upon a label. *Knapp Engraving Co. v. Keystone Photo Engraving Corp.*, 1 A.D.2d 170, 172, 148 N.Y.S.2d 635, 637 (1956). . . .What is important is that there must be the infliction of intentional harm, resulting in damage, without legal excuses or justification. See *Aikens v. State of Wisconsin*, 195 U.S. 194, 204, 25 S.Ct. 3, 49 L.Ed. 154 (1904); *Rager v. McCloskey*, 305 N.Y. 75, 81, 111 N.E.2d 214, 217 (1953); *Ruza v. Ruza*, 286 App.Div. 767, 769, 146 N.Y.S.2d 808, 810 (1955); *Knapp Engraving Co. v. Keystone Photo Engraving Corp.*, *supra*, 1 A.D.2d 170, 172, 148 N.Y.S.2d 635, 637 (1956). . . .The utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow. . . . It logically follows that to sustain a complaint, it is not necessary that the pleading must allege that the defendant was solely motivated to injure the plaintiff.  It is enough if the falsehoods charged were intentionally uttered and did in fact cause the plaintiff to suffer actual damage in his economic or legal relationships.

*Id.* at 443-445.

Accordingly, as expressed in *Penn-Ohio*, and the Restatement 2d Torts, it can be seen that a cause of action for Injurious Falsehood will lie against:

> one who publishes a false statement harmful to the interest of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

- 12 -

Restatement 2d (Torts). § 623A.

Here, it is alleged that Mr. Graustein made his false statements to the Red Sox and MasterCard in furtherance of a "scheme" to undermine both entities' faith in Mr. Henneberry and thereby take-over Smartix. It is further alleged that Mr. Graustein's statements were made "with the intent to cause harm to Mr. Henneberry or, alternatively, were of such a nature that SCOA should have recognized that they would cause harm to Mr. Henneberry if published." *See*, Comp. at para. 145. It is also alleged that: "the statements by SCOA to Mr. Dee [and MasterCard] were made with the knowledge that they were false, or alternatively, were made with a reckless disregard as to whether they were true or false." *See*, Comp. at para. 146.

Accordingly, it is respectfully submitted that plaintiff has averred the requisite elements of Injurious Falsehood in his complaint. As will be discussed below, it is submitted that plaintiff has also appropriately pled special damages in support of his claim of Injurious Falsehood.

**POINT V.**

**PLAINTIFF'S FOURTH COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE**

Plaintiff agrees that *Guard-Life Corporation v. S.Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980) and *NBT BankCorp. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (1996) describe the necessary elements of a claim for tortious interference with prospective advantage. A reading of those cases reveals that a tortfeasor may avoid liability for his acts only if he can show that that interference did not involve "wrongful means." *Guard-Life* at 191. As admitted by defendants, "wrongful means" include misrepresentations. *Id.*

It is alleged that defendants did, without authorization, go to Mr. Henneberry's former clients and publish false and defamatory statements to those entities, with the result that those entities completely altered their perception of Mr. Henneberry and would no longer do business

- 13 -

with him. *See,* Comp. at paras. 87-109 and 121-151. In addition, at paragraphs 153 and 154 of the Complaint, Mr. Henneberry specifically states that defendants used "improper means" and acted with the sole purpose of causing injury to Mr. Henneberry's reputation.  Because the allegations of the Complaint must be accepted, defendants' arguments based upon the lack of "wrongful means" must fail.

The single case cited by defendants in support of their claim of privilege is once again inapposite. *Felsen v. Sol Café Mfg. Corp.,* 24 N.Y.2d 682 (1969) involved a purported interference with an existing employment contract, not a prospective contract. *Id.* at 684, 685. In addition, contrary to defendants' assertion, the *Felsen* Court did not grant stockholders *carte blanche* to interfere simply based upon their stock ownership. Instead, the *Felsen* court articulated the same standard expressed some ten years later in *Guard-Life* when the Felsen court held that a stockholder may have a right to interfere if "his purpose is to protect his own interest and if he does not employ improper means." *Id.* at 687.  Here, as discussed above, plaintiff has pled that improper means, in the form of unauthorized contact and knowingly false statements, were used. Accordingly, it is respectfully submitted that plaintiff has sufficiently pled his cause of action for tortious interference with prospective advantage.

## POINT VI.

### PLAINTIFF'S FIFTH COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR BREACH OF CONTRACT.

Through his Fifth Count, Mr. Henneberry seeks to recover damages based upon SCOA's breach of its agreement to contribute a minimum of $3 million, up to a maximum of $5 million to Smartix.  This cause of action is distinct from defendants' tortious actions and only concerns the agreement breached on June 4, 2002. *See,* Comp. at para 57.  As set forth in paragraphs 48 through 58 of the Complaint, this agreement was the subject of investigation and due diligence on the part of Smartix; was reduced to writing by SCOA; and was sent to Smartix for execution.

- 14 -

In addition, in part-performance under this agreement, Smartix changed its position in several material ways. *See*, Comp. at para. 53. One of these changes in position was the filing of a Re-stated Certificate of Incorporation with the Secretary of State. As can be seen by comparing Exhibit 2 to the Deitch Decl. with Exhibit 3 attached thereto, this re-statement altered the very fabric of Smartix, and gave SCOA tremendous power and authority to block corporate action and governance. *See*, Exhibit 3 of Deitch Decl. at Article 6.

Under New York law, a third party may recover for damages flowing from a breach of contract when that party is an intended beneficiary of the contract. *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 600 (2d Cir.1991). In deciding whether a party is an intended beneficiary of contract, New York courts follow the Second Restatement of Contracts which provides that a third party is an intended beneficiary if:

> recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302(b) (1979).

The court's inquiry is informed by "the surrounding circumstances as well as the agreement." *Barnum v. Millbrook Care Ltd. Partnership,* 850 F.Supp. 1227, 1233 (S.D.N.Y. 1994) *citing, Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989), *aff'd without opinion,* 43 F.3d 1458 (2d Cir.1994). The intent to benefit a third party need not be expressly stated in the contract. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 573 (2d Cir.1991). In fact, it is not necessary even that the identity of the third party be known at the time the contract is signed. *MK West St. Co. v. Meridien Hotels, Inc.,* 184 A.D.2d 312, 313, 584 N.Y.S.2d 310, 312 (1st Dept. 1992)

While defendants argue that Mr. Henneberry was not an intended beneficiary of the agreement between SCOA and Smartix, the fact remains that he was. SCOA was aware that Mr. Henneberry was earning a salary from the Company and had made a loan to the company in the

- 15 -

amount of $100,000. *See*, Comp. at para. 54. As such, Mr. Henneberry was in a position distinct from the other shareholders in the corporation who were not earning a salary and who had not made loans. It is alleged that SCOA's failure to live up to its obligation ultimately cost Mr. Henneberry, *inter alia*, his salary and the ability to re-coup his loan. *See*, Comp. at para. 166-68. Thus, Mr. Henneberry suffered injury distinct from other shareholders due to the breach.

It is also alleged that SCOA's breach also caused damages in the form of diminution in the value of Mr. Henneberry's Smartix stock. Because the diminution in stock value was a foreseeable consequence of SCOA's failure to abide by its contract, such damages are appropriately pled and are recoverable. *See, e.g., Sabbeth Industries Limited v. Pennsylvania Lumbermans Ins. Co.*, 656 N.Y.S.2d 475 (3d. Dept. 1997)("It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach" and " '. . . such unusual or extraordinary damages [as] have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting' " *Id.* at 477, *citing, Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319, 540 N.Y.S.2d 312 (1989), *quoting Chapman v. Fargo,* 223 N.Y. 32, 36, 119 N.E. 76 (1918).

Here, it cannot be disputed that Mr. Henneberry's unique status was known to SCOA. It is respectfully submitted that this status, at a minimum, raises questions of fact concerning SCOA's intention to benefit Mr. Henneberry which preclude the dismissal of the Fifth Count.

### POINT VII.

### PLAINTIFF'S SIXTH COUNT SETS FORTH A VIABLE CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY.

Here, SCOA owed Mr. Henneberry a fiduciary obligation because it was a *de facto* majority shareholder in Smartix and was a joint venturer with Smartix. The fact of his joint venture is specifically referenced at para. 60 of the Complaint. In addition, as discussed above,

- 16 -

the New York Courts have recognized investment bankers as having special skill, knowledge, and experience in their field. *See, EBC I at *2, supra; see also, Kimmell v. Schaefer,* 89 N.Y.2d 257 (1996)(discussing special relationships between parties).

SCOA wielded substantial control over the affairs of Smartix through the power of its purse and the Re-Stated and Amended Certificates of Incorporation for Smartix. *See,* Exhibits 3, 4 and 5 to Deitch Decl. at Article 6. As can be seen through a review of these documents, SCOA could completely control whether Smartix could "sell, convey or other wise dispose of" the intellectual property license which was the single significant corporate asset. *Id.* at 6.8. In addition, SCOA could prevent any reorganization, consolidation or merger of the company (Article 6.7); the declaration of a dividend (Article 6.9); and prevent any amendment of the Bylaws or Articles of Incorporation (Article 6.1).

The perception of SCOA as a majority shareholder is reflected in Mr. Henneberry's September 19, 2003 e-mail (attached to the Complaint as Exhibit "A") wherein he makes reference to SCOA as a "major shareholder". SCOA's power was so great that it exercised a veto of Mr. Henneberry's suggestion of bankruptcy. *See,* Comp. at para. 71, 72 and Exhibit "C" thereto.

As a *de facto* majority shareholder, SCOA is in a fiduciary relationship with the remaining shareholders. *See, e.g. Barbour v. Knecht,* 296 A.D.2d 218, 227, 743 N.Y.S.2d 483 (2002)(a majority shareholder in a close corporation is in a fiduciary relationship with the minority). The fact that a minority shareholder can be a *de facto* majority shareholder has been recognized by our Supreme Court. *Gould v. Ruefenacht,* 471 U.S. 701, 105 S.Ct. 2308 (1985)("de facto operational control may be obtained by the acquisition of less than 50%) *Id.* at 705, *citing, Golden v. Garafalo,* 678 F.2d 1139, 1146 (2d. Cir.1982) ("In 'economic reality,' considerably less than 100%, and often less than 50%, of outstanding shares may be a controlling

block which, when sold to a single holder, effectively transfers the power to manage the business").

It is therefore respectfully submitted that plaintiff has pled the requisite elements to show that a joint venture was formed between Smartix and SCOA.  Further, plaintiff has shown that SCOA was in a special position of trust and confidence in its dealings with Smartix and Mr. Henneberry; and, SCOA was a *de facto* majority owner of Smartix owing the remaining members a fiduciary obligation.

## POINT VIII.

## PLAINTIFF HAS APPROPRIATELY PLED SPECIAL DAMAGES AND IS ENTITELD TO RECOVER THE VALUE OF HIS DIMINSHED SMARTIX STOCK

**A.     Plaintiff has pled special damages with the requisite particularity.**

Plaintiff concedes that the tort of Injurious Falsehood requires the complainant to plead special damages. Plaintiff also concedes that the tort of Defamation, if not Defamation *Per Se*, requires the complainant to plead special damages.

Here, plaintiff has pled special damages in support of his claims for Defamation and Injurious Falsehood. *See*, Comp. at para. 127-143; 150.  With the exception of Mr. Henneberry's claim for lost future earnings, which is properly the subject of expert testimony and is addressed below, these damages have all been alleged with exactitude in each cause of action and in the *ad damnum* clause of the Complaint.

**B.     Claims of Injurious Falsehood are not limited to cases of "trade libel" and damages are not limited to claims of property damage.**

Contrary to defendants' assertions, the tort of Injurious Falsehood is not limited to cases of "trade libel" involving businesses. To be sure, there is a line of cases to that effect, but defendant overlooks other cases dealing with an individual's right to recover under this cause of action. *See, e.g.*, *Sadowy v. Sony Corporation of America*, 496 F.Supp 1071  (S.D.N.Y. 1980);

- 18 -

*Sprewell v. NYP Holdings, Inc.*, 772 N.Y.S.2d 188 (2003)(professional basketball player's fine of $250,000 compensable); and, *Cromarty v. Prentice-Hall, Inc.*, 72 A.D.2d 782 (2d. Dept. 1979)($60,000 diminution in value of home and $9,000 in out of pocket expenditures recoverable).

In *Sadowy*, plaintiff, a regional general manager for Sony, sued to recover damages arising out of harm to his business reputation caused by defendant after it terminated his employment. *Id.* at 1074. Plaintiff there alleged that, *inter alia*, defendant "maliciously engaged in an intentional campaign to inflict injury upon the plaintiff in order to destroy his reputation in the consumer electronics business community, and to insure that plaintiff would never be employed in the same or similar capacity in which he had been previously employed." *Id.* In finding that plaintiff had pled a cause of action for injurious falsehood, the *Sadowy* court addressed the sufficiency of the damages alleged by plaintiff. Like Mr. Henneberry here, the plaintiff there sought compensation for lost future earnings caused by defendants' actions. Specifically, the Court held that, on the issue of pleading special damages:

> Defendant is correct that special damages, specifically itemized, are an element of a claim for prima facie tort. Penn-Ohio Steel Corp. v. Allis- Chalmers Mfg. Co., 7 A.D.2d 441, 184 N.Y.S.2d 58, modified on other grounds, 8 A.D.2d 808, 187 N.Y.S.2d 476 (1st Dept. 1959). In the case at hand, the claim for $500,000 for lost income originally pleads special damages. Korry v. ITT, *supra*, 444 F.Supp. at 193 (S.D.N.Y. 1978). Defendant concedes that lost income can constitute special damages, but argues that count one does not state a claim for wrongful termination, and therefore, these special damages do not flow from this count.

> The problem with this argument is that the entire thrust of count one is that defendant's actions and statements prevented plaintiff from obtaining subsequent employment in the electronics industry. Plaintiff alleges that he has sought such employment and, despite a successful professional record, was unable to find any. Plaintiff's calculation of his lost income was reasonably based on his previous salary while at Sonam, i. e., $50,000 a year for the ten years he could have worked before reaching Sonam's mandatory retirement age. In the context of the first count, this claim for $500,000 lost income is "a statement of reasonably identifiable losses sustained by the plaintiff." Bohm v. Holzberg, 47 A.D.2d 764, 365 N.Y.S.2d 262, 264 (2d Dept. 1975), and as such is "sufficiently alleged to put the defendant on notice as to the precise nature of the damages in order that the defendant might be prepared to defend the action." McCullough v. Certain Teed

Products Corp., 70 A.D.2d 771, 417 N.Y.S.2d 353, 354 (4th Dept. 1979).

The claim for lost income preserves plaintiff's first count. The remaining monetary claims in count one are stricken unless plaintiff can re-plead within 20 days to state a claim for any further actual losses attributable to the allegations of count one. Diehl & Sons, Inc. v. International Harvestor Co., 445 F.Supp. 282, 292 (E.D.N.Y.1978); Korry v. ITT, *supra*, 444 F.Supp. at 193; Groat v. Town Board of the Town of Glenville, 100 Misc.2d 326, 329, 418 N.Y.S.2d 842, 845 (Sup.Ct. 1979).

Here, Mr. Henneberry alleges that he has "incurred special damages in the form of the diminution in the value of his Smartix stock; the loss of certain loans made to Smartix; the loss of expenses incurred on Smartix business; the loss of salary as Chairman of Smartix and, the loss of prospective income from MLB and MasterCard." *See*, Comp. at 127. He then goes on to detail these special damages in paragraphs 128 through 142 of the Complaint.

Mr. Henneberry's claim for lost future business opportunities is based upon his historic record of consulting for MasterCard and Major League Baseball. As set forth at paragraph 139 of the Complaint, Mr. Henneberry was earning a base retainer of $10,000 to $25,000 per month as a consultant for these two entities from December 1995 through January 2000. In paragraph 140 of the Complaint, Mr. Henneberry contends that "[d]ue to the actions of defendants, Mr. Henneberry is now no longer considered for consultancies with MasterCard or MLB and has lost his prior position of respect and confidence with those institutions. Furthermore, at paragraph 141, he contends that: "[a]s a result of defendants' actions, Mr. Henneberry has suffered special damage in the form of the lost ability to consult with MLB and MasterCard and has lost the prospective income associated therewith."

Mr. Henneberry therefore affords defendants with estimate of "a statement of reasonably identifiable losses sustained by the plaintiff." *Bohm v. Holzberg*, 47 A.D.2d 764, 365 N.Y.S.2d 262, 264 (2d Dept. 1975). The fact that counsel placed a round number in the a*d damnum* clause so as to preserve Mr. Henneberry's rights should not serve to deprive Mr. Henneberry of his day

- 20 -

in Court.

Accordingly, like the plaintiff in *Sadowy*, Mr. Henneberry has provided defendants with specific, identifiable allegations of pecuniary loss and alleges a causal relationship between defendants' action and the loss. His claims are not deficient and should not be dismissed.

## C.  Mr. Henneberry's claims of diminished stock value are personal and are the result of defendants' tortious actions against him.

Defendants paint Mr. Henneberry's claims of diminished stock value as being derivative, and not direct. They therefore argue that the claims cannot be maintained. In support, defendants mistakenly over-generalize and hinge their argument upon the statement that: "shareholders of a corporation do not have personal standing to sue for injuries to the corporation. Pl. br. at 7.

In *Glenn v. Hoteltron Systems, Inc.*, 74 N.Y.2d 386, 392 (1989), the New York Court of Appeals stated the general rule as follows:

> It is the general rule that, because a shareholders' derivative suit seeks to vindicate a wrong done to the corporation through enforcement of a corporate cause of action, any recovery obtained is for the benefit of the injured corporation *(see,* Business Corporation Law § 626 [e]; *Wolff v Wolff,* 67 N.Y.2d 638 (1986); *Carruthers v Jack Waite Min. Co.,* 306 N.Y. 136, 140 (1953); *Clarke v Greenberg,* 296 N.Y. 146, 149 (1947)). Where, however, the plaintiff sues in an individual capacity to recover damages resulting in harm, not to the corporation, but to individual shareholders, the suit is personal, not derivative, and it is appropriate for damages to be awarded directly to those shareholders *(see, Sautter v Fulmer,* 258 N.Y. 107 (1932); *Geltman v Levy,* 11 A.D.2d 411 (1960); *Norte & Co. v Huffines,* 416 F.2d 1189 (1969)[explaining *Perlman v Feldmann,* 219 F.2d 173 (1955)]; *cf., Schur v Salzman,* 50 A.D.2d 784 (1975)).

> *Id.* at 392.

Here, Mr. Henneberry does not allege a diversion of corporate assets or a padding of expenses. Instead, he alleges harm directly flowing from the tortious acts committed against him. Defendants maliciously uttered defamatory statements concerning Mr. Henneberry to his closest business customers. As a result of this, those entities lost faith in him. As a result of that lost faith, those entities no longer wished to participate in the Smartfan program, and the program failed. Mr. Henneberry thereby lost, *inter alia*, the value of his stock. Although it is true that all

- 21 -

shareholders suffered the same loss, none suffered the same injury. Because the injury was personal to Mr. Henneberry, he can maintain an action for the value of his lost stock.

The other cases cited by defendants actually support this proposition. For example, in *Schaeffer v. Lipton*, 243 A.D.2d 969 (4th Dept. 1997) Plaintiff took title to real property in his own name to expand his plastics manufacturing business, "Usheco". When the property could not be developed, he sued his attorney for malpractice. *Id.* at 970. Upon defendant's cross-motion for partial summary judgment, the trial court dismissed plaintiff's claim for lost profits finding that it was in injury to the business. *Id.* The Appellate Division recognized that plaintiff's claim of damage flowing from his inability to expand his business was personal to him and was improperly dismissed. Accordingly, plaintiff's claims were reinstated. *Id.* at 971.

Similarly, *New Castle Siding Company v. Wolfson*, 97 A.D.2d 501 (1983) is supportive of plaintiff's claim. There, although the Appellate Division found that plaintiff there did not have claim against a corporate accountant, the court held that: "[w]here, however, for example, it appears that the injury to a shareholder resulted from the violation of a duty owing to the shareholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity, an individual cause of action may exist for a shareholder of an allegedly wronged corporation." Id. at 502, *citing, Shapolsky v Shapolsky*, 53 Misc.2d 830 (Sup.Ct. 1966), *affd* 28 A.D.2d 513). *See, also, Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985)(exceptions to the general rule have been recognized when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged (citations omitted)). [1]

---

[1] The remaining cases relied upon by defendants are readily distinguishable. In *Davis v. Magavern*, 237 A.D.2d 902 (App. Div. 1997) the complaint actually alleged a misappropriation of corporate assets. In *Bordereaux v. Salomon Smith Barney Holdings, Inc.*, 269 A.D.2d 217, 218 (1st Dept. 2000), because the consulting agreement between defendant and the company plaintiff held stock in expressly provided that the consultant owed a duty only to company and not shareholders, shareholder could not claim third-party beneficiary status.

Here, defendants committed tortious acts against Mr. Henneberry. While defendants' actions against Mr. Henneberry may have also backfired and destroyed Smartix, it does not mean that defendants can be rewarded by avoiding an element of Mr. Henneberry's loss. As stated earlier, although it is true that all shareholders suffered the same loss, none suffered the same injury.

**D.    Any questions concerning proximate cause are properly left for the Jury and are not amenable to disposition on a motion to dismiss.**

Defendants argue that Mr. Henneberry's claims of failed loans, unreimbursed expenses and lost Smartix salary "flow from the failure of Smartix" and are not proximately related to the defamation of Mr. Henneberry. *See,* Def. br. at p. 18, 19.  Defendants do not make this argument concerning the other causes of action asserted in the complaint.

As discussed above, while it is undoubtedly true that Smartix was not in a strong financial condition at the time of the alleged defamation, the proofs will show that it had a working product that would have succeed if the Red Sox had signed on to the program in the fall of 2003.  However, the defendants' tortious actions destroyed the Red Sox's faith in Mr. Henneberry and lost the chance of the Red Sox's signing on to the Smartfan program for 2004. In brief, their actions caused the ruination of the company with the resulting devaluation of corporate stock.  *See, e.g.,* Comp. at Exhibit "C".

While defendants are entitled to claim that their actions did not cause the company to fail, Mr. Henneberry alleges that they did. *See,* Comp. at para. 130 -137.   Here, where the operative facts are in dispute, questions of proximate cause are for the jury to answer.  *See, Nowlin v. City of New York,* 81 N.Y.2d 81, 595 N.Y.S.2d 927 (1993) *citing, Derdiarian v. Felix Contr. Corp.,* 51 N.Y.2d 308, 434 N.Y.S.2d 166 (1980). It is therefore respectfully submitted that Mr. Henneberry has satisfied his burden of pleading with regard to establishing special damages, where appropriate, in support of his claims. Further, it is submitted that any questions of

- 23 -

proximate cause are questions for the jury to answer, and are not appropriately decided through a motion to dismiss.

## POINT IX.

### PLAINTIFF IS ENTITLED TO AMEND THE COMPLAINT AS OF RIGHT.

Plaintiff has the right to amend his complaint one time without leave of Court prior to service of a responsive pleading by defendant. F.R.Civ.P. 15(a). Here, defendant has chosen to move instead of filing a responsive pleading. Accordingly, in the event any portion of the Complaint is dismissed, leave should be granted to re-plead as of right.

If the Court considers whether re-pleading would be futile, the Court should find that it is not. Mr. Henneberry has clearly been wronged by the actions of defendants. Defendants' citation to *Oneida Indian Nation of New York v. City of Sherrill, New York*, 337 F.3d 139 (2d. Cir.2003) as precluding re-pleading here is misplaced. *Oneida* is factually and procedurally distinct from the case at bar. There, after years of litigation, one of the many defendants in one of the many related actions, sought leave to amend its answer to assert certain affirmative defenses based in law. *Id.* at 168. Because the defenses alleged involved questions of law, not fact, the Court of Appeals reviewed the decision to deny *de novo* and affirmed same. The case at bar is distinct because if plaintiff is required to re-plead, plaintiff will present additional facts, not arguments of law. Defendants' citation to *Ellis v. Chao,* 336 F.3d 114 (2d. Cir.2003) is also misplaced because, there, right to re-plead was granted.

As stated by the Supreme Court, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep. . . may be decisive to the outcome and accept the principle that the purpose of the pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

It is respectfully submitted that Mr. Henneberry is entitled to his day in Court, and a ruling on the merits after full discovery.

- 24 -

## CONCLUSION

Defendants' motion must be denied.   Alternatively, it is respectfully submitted that

plaintiff must be allowed to re-plead any cause of action or claim found deficient.

Respectfully submitted,

**MENDES & MOUNT, LLP**
Attorneys for the Plaintiff

By:  _____
John M. Deitch, Esq. (JD5221)

MENDES & MOUNT, LLP.
One Newark Center, 19th Floor
Newark New Jersey, 07102
(973) 639-7300

Dated:  Newark, New Jersey
June 8, 2004

- 25 -

# UNITED STATES DISTRICT COURT
*for the*
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

WILLIAM HENNEBERRY,

Case No.:  04 CV 2128

Plaintiffs,

against

**AFFIDAVIT OF SERVICE**

SUMITOMO CORPORATION OF AMERICA;
ROBERT GRAUSTEIN; SUMITOMO CORPORATION;
And, John Does 1-50 (fictitiously named individuals),

Defendants.

-----------------------------------------------------------------x

STATE OF NEW JERSEY    )
COUNTY OF ESSEX)) ss.:

CHERYL JONES, being over the age of eighteen, and after being placed under oath, hereby swears to the following under penalty of perjury:

1.      I am secretary to John M. Deitch, Esq., attorney for the plaintiff in the above captioned matter. I make this affidavit as proof of service of the following documents upon defendants Sumitomo Corporation of America and Robert Graustein by and through their attorneys Siller Wilk, LLP at the following address:  Siller Wilk, LLP, 675 Third Avenue, New York, New York 10017:

   a.   Memorandum of Law in opposition to motion to dismiss by Sumitomo Corporation of America and Robert Graustein (2 copies);

   b.   Declaration of John M. Deitch, Esq, with exhibits (2 copies).

*Cheryl Jones*

Cheryl Jones, Legal Secretary

Dated: June 8, 2004

Sworn to before me this 8th
day of  June 2004,

*Elizabeth Lugo*                Notary Public

**ELIZABETH LUGO**
**A Notary Public Of New Jersey**
**My Commission Expires August 3, 2008**