UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM HENNEBERRY,

    Plaintiff,

- against -

SUMITOMO CORPORATION OF
AMERICA, ROBERT GRAUSTEIN,
SUMITOMO CORPORATION, and JOHN
DOES nos. 1-50 (fictitiously named
individuals),

    Defendants.



**MEMORANDUM ORDER**

04 Civ. 2128 (PKL)

**APPEARANCES**

JOHN M. DEITCH, ESQ.
Mendes & Mount LLP
One Newark Center, 19th Floor
Newark, New Jersey 07102

Attorneys for Plaintiff

STUART M. RIBACK, ESQ.
Siller Wilk LLP
675 Third Avenue
New York, New York 10017
Stephen D. Hoffman, Esq.

Attorneys for Defendant Sumitomo Corporation

**LEISURE, District Judge:**

Plaintiff William Henneberry brings this action against all named defendants for: (1) detrimental reliance, including promissory estoppel and negligent misrepresentation; (2) breach of contract; (3) breach of fiduciary duty; (4) defamation, including slander *per se*; (5) injurious falsehood; and, (6) tortious interference with prospective economic advantage. Plaintiff's claims arise out of a business investment relationship between the company of which Henneberry was Chief Executive Officer ("CEO") and majority shareholder, Smartix International Corp. ("Smartix"), and defendants Sumitomo Corporation of America as investor, its Senior Vice President Robert Graustein,[1] and Sumitomo Corporation ("Sumitomo") as the parent company of SCOA.

Defendant Sumitomo filed the instant motion to dismiss for failure to state a claim for which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), on August 16, 2004. Defendant makes a series of arguments, only one of which was not disposed of in this Court's Opinion and Order, dated April 27, 2005, which granted in part and denied in part SCOA's motion to dismiss plaintiff's Complaint. To the extent that decision dismissed plaintiff's claims which derivatively implicated Sumitomo as SCOA's parent, those claims are also dismissed as to Sumitomo. Further, because that decision did not dismiss plaintiff's defamation claim and defendant SCOA's arguments mirror those presented by Sumitomo, that claim survives as to Sumitomo for the purpose of the Court's disposition of the instant motion to dismiss. Sumitomo's only argument distinct from those set forth in SCOA's motion to dismiss is that plaintiff failed to plead adequately that Sumitomo, as SCOA's parent company, can be held liable for SCOA's allegedly tortious actions

---

[1] Because the claims against Sumitomo Corporation of America and Graustein are indistinguishable, the Court will refer to both defendants collectively as "SCOA" hereinafter.

giving rise to this litigation. The Court assumes familiarity with its recent Opinion and Order and therefore only recites those facts necessary to decide the instant motion.

## BACKGROUND

William Henneberry, an accomplished entrepreneur in the field of marketing, was both a stockholder and, until December 31, 2003, CEO of Smartix. (Plaintiff William Henneberry's Complaint ("Compl.") ¶¶ 11-12.) At all relevant times, Smartix was a privately traded company which created and operated an electronic ticket promotion for Major League Baseball, known as the "Smartfan" program. (Id. ¶¶ 21, 23.) To support the development of the Smartfan program, Smartix solicited investment from private individuals and groups. (Id. ¶ 26.) One of the entities that agreed to invest in Smartix was defendant Sumitomo Corporation of America, a wholly owned subsidiary of Sumitomo. (Id. ¶ 31.)

In the Spring of 2002, SCOA agreed to invest in Smartix a maximum of five million dollars and a minimum of three million dollars. In reliance on this agreement, Smartix changed its position with regard to its shareholders and other investors. SCOA, however, did not fulfill that agreement but instead invested one million dollars pursuant to a separate investment agreement. (Id. ¶¶ 48, 57, 60.) This failure to invest the higher agreed upon amount caused Smartix to become underfunded, all the while leading Henneberry to believe that SCOA was seeking to locate investors for Smartix and would invest additional funds itself. (Id. ¶¶ 62, 64.) Moreover, Henneberry personally loaned money to Smartix based on his reliance on SCOA's ongoing representations that they would invest further and find third party investors. However, SCOA made no further investments in Smartix after the June 2002 one million dollar investment and did not produce a third party investor for Smartix.

From approximately June through September 2003, Henneberry continued to inform SCOA of Smartix's difficult financial situation. In September 2003, SCOA surreptitiously met with

3

representatives of the Boston Red Sox and MasterCard – two entities with whom Smartix was doing business – and told them that Smartix was failing because of Henneberry. (Id. ¶¶ 90, 100.) Specifically, the Complaint alleges that SCOA stated that "Henneberry lacked the necessary skill and ability to manage Smartix and [that SCOA] otherwise disparaged his business acumen. Further [SCOA] placed blame for Smartix' [*sic*] present financial condition, and inability to pay monies owed to the Red Sox, upon the purported mismanagement of Smartix by Mr. Henneberry." (Id.) Allegedly as a result of these acts by SCOA, Smartix failed. Sumitomo was aware of SCOA's meetings with the Red Sox and MasterCard (id. ¶¶ 93, 103) and provided SCOA with direction and control concerning SCOA's investment in Smartix and its dealings with Henneberry (id. ¶ 35). Henneberry seeks damages from the reduced value of his Smartix stock, injury to his reputation, loss of unpaid loans, and other damages. Sumitomo responded with the instant motion to dismiss.

## DISCUSSION

### I. Standard under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept plaintiff's allegations as true, see Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 175 (2d Cir. 2004), and construe all well-pleaded factual allegations in the Complaint in plaintiff's favor. Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A court is not "not bound to accept as true a legal conclusion couched as a factual allegation." Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, a party is entitled to dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiff, in seeking to impose liability on Sumitomo for the alleged wrongful action of its subsidiary SCOA, asserts both direct claims arising from the affirmative acts of Sumitomo, and derivative claims arising out of the parent/subsidiary relationship between Sumitomo and SCOA. As discussed below, neither the direct nor derivative claims are viable because plaintiff failed to plead facts that would support any of his claims against defendant Sumitomo.

II.     Insufficient Pleadings

Plaintiff, in his memorandum opposing defendant Sumitomo's motion to dismiss, asserts that his direct claims arise "from the affirmative acts of Sumitomo in authorizing and instructing its subsidiary to engage in tortious behavior." (Plaintiff's Memorandum of Law in Opposition to Defendant Sumitomo Corporation's Motion to Dismiss the Complaint ("Pl.'s Opp'n") at 4.) In his Complaint, however, Plaintiff fails to allege any facts evidencing such affirmative acts on the part of Sumitomo. Moreover, the Complaint itself makes no mention of Sumitomo "authorizing and instructing" SCOA to engage in tortious behavior. Id. The Complaint only alleges that SCOA acted under the direction and control of Sumitomo and that Sumitomo was aware of SCOA's allegedly tortious actions. (Compl. ¶¶ 35, 93, 103.) Even if the Court were to interpret this averment as one stating that Sumitomo acted affirmatively, the Complaint does not offer any factual allegations to support these legal conclusions. Without such factual support, plaintiff's use of the legal buzz words "direction and control" lacks sufficient sting. Thus, the Complaint is not "detailed and informative enough to enable defendant to respond and to raise the defense of *res judicata* if appropriate." Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986); see also Fed. R. Civ. P. 8(a).

Similarly, plaintiff's asserted derivative claims against Sumitomo lack any factual foundation that would allow plaintiff to impute SCOA's alleged wrongdoing to the parent company. "Under New York law, 'a parent company is not automatically liable for the acts of its wholly-owned

5

subsidiary.'" Degraziano v. Verizon Communications., Inc., 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004) (quoting Manchester Equip. Co. v. Amer. Way and Moving Co., 60 F. Supp. 2d 3, 6 (E.D.N.Y. 1999)); Maung Ng We v. Merrill Lynch & Co., 99 Civ. 9687, 2000 U.S. Dist. LEXIS 11660, at *7-8 (S.D.N.Y. Aug. 14, 2000). "A corporate parent may, however, be held to account for the wrongs of its subsidiary if the corporate form is disregarded under a veil piercing analysis or . . . under traditional principles of agency." Maung Ng We, 2000 U.S. Dist. LEXIS 11660, at *7-8.

Plaintiff fails to allege facts or make arguments supporting either theory of liability as to Sumitomo. Plaintiff claims that he has "demonstrated that the parent exercised control over the activities of the subsidiary." (Pl.'s Opp'n at 4.) However, the Complaint only makes the conclusory statements that Sumitomo had knowledge of SCOA's tortious action and exercised direction and control over SCOA. Mere conclusory statements alleging the exercise of such control are insufficient to survive a motion to dismiss. Treimer v. Bobsan Corp, 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999). Plaintiff cannot rehabilitate his inadequately pleaded Complaint by repeating his assertion that Sumitomo exercised direction and control over SCOA "at the outset of each count of the Complaint" (Pl.'s Opp'n at 4) without factual allegations of complete control. See, e.g., Achtziger v. Fuji Copian Corp., 750 N.Y.S.2d 413, 415-16, 299 A.D.2d 946, 948 (App. Div. 2002) (noting that the complaint must allege the parent had "complete dominion and control over [the subsidiary's] daily operations"); Feszczyszyn v. General Motors Corp., 669 N.Y.S.2d 1010, 248 A.D.2d 939 (App. Div. 1998) (refusing to hold a parent company liable for its subsidiary's acts where, *inter alia*, the parent did not control the subsidiary's daily operations, including hiring and terminating its employees); Cresser v. American Tobacco Co., 662 N.Y.S.2d 374, 377-78, 174 Misc. 2d 1, 4-6 (N.Y. Sup. Ct. 1997) (finding plaintiff failed to plead sufficiently that the parent exerted complete control over the subsidiary such as to overcome New York courts' reluctance to disregard

6

the corporate form). Thus, there is no support in the Complaint for a derivative claim against Sumitomo.

    III.  Leave to Replead

Defendant asks the Court to dismiss the Complaint with prejudice, prohibiting plaintiff from repleading his claims. Plaintiff can replead as of right one time without leave of the Court prior to defendants' filing a responsive pleading under Federal Rule of Civil Procedure 15(a). However, this right is extinguished when the Court grants a motion to dismiss. Sbrocco v. Pacific Fruit, Inc., No. 82 Civ. 5650, 1983 U.S. Dist. LEXIS 14825, at *6-7 (S.D.N.Y. Aug. 8, 1983) ("[W]hile the law in this circuit is that a motion to dismiss is not a responsive pleading, and therefore the complaint may be amended without leave of the court, it is equally well established that this right terminates upon the granting of the motion to dismiss.") (citing Christophides v. Porco, 298 F. Supp. 403 (S.D.N.Y. 1968), and Swan v. Bd. of Higher Educ. of the City of New York, 319 F.2d 56 (2d Cir. 1963)). If the Court finds that it would be futile to allow plaintiff to replead because he cannot set forth facts supporting a viable claim, leave to amend should be denied. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003). Plaintiff has not submitted any facts or argument in his opposition papers that would rehabilitate his claims against Sumitomo as dismissed by this Opinion. However, given that plaintiff has yet to have an opportunity to replead and that defendant finds protection in Federal Rules 11, 12, and 56 if plaintiff makes allegations in bad faith, without legal support, or without factual support, the Court grants plaintiff twenty days from the date of this Opinion in which to seek leave to replead. See Highland Capital Mgmt., L.P. v. Schneider, No. 02 Civ. 8098, 2004 U.S. Dist. LEXIS 18131, at *19 (S.D.N.Y. Sept. 9, 2004) (Leisure, J.); Sbrocco, 1983 U.S. Dist. LEXIS 14825, at *7.

# CONCLUSION

For the reasons set forth above, Sumitomo's motion to dismiss plaintiff's Complaint is GRANTED. Plaintiff has TWENTY (20) DAYS from the date of this Memorandum Opinion to seek leave to replead his Complaint as to defendant Sumitomo Corporation.

**SO ORDERED.**
**New York, New York**

May 3, 2005

_____
U.S.D.J.

Copies of this Memorandum Opinion have been sent to:

John M. Deitch, Esq.
Mendes & Mount LLP
One Newark Center, 19th Floor
Newark, New Jersey 07102

Stuart M. Riback, Esq.
Siller Wilk LLP
675 Third Avenue
New York, New York 10017